## NATIONAL SYRUP COMPANY

### v.

## ALBERT CARLSON.

*Master and Servant—Negligence of Former—Personal Injury—Unrailed Elevator Shaft—Release.*

In an action brought by an employe to recover for personal injuries suffered in the course of his employment through falling into an unprotected elevator shaft, this court holds that the evidence supports a finding of negligence on the part of the defendant; that the release of damages obtained from the plaintiff on account of his injuries was not fairly obtained, and that the judgment in his favor can not be disturbed.

[Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of Winnebago County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. WALKER & EDDY and A. D. EARLY, for appellant.

Mr. CHARLES A. WORKS, for appellee.

MR. JUSTICE CARTWRIGHT. This case was before this court on a former appeal, when the judgment was reversed on account of errors in giving instructions and in rulings on the admission of evidence. National Syrup Co. v. Carlson, 42 Ill. App. 178.

The case was reinstated in the Circuit Court and again tried. At the close of the evidence for the plaintiff, the defendant entered its motion to have the court direct a verdict for defendant. The motion was overruled and at the conclusion of all the evidence in the case, was renewed and again overruled. The defendant then asked the court to instruct the jury that the evidence was insufficient to maintain the plaintiff's cause of action charged in his declaration, and that their verdict should be for the defendant, but the court refused to so instruct the jury. No other instruction was

asked or given. A verdict for $3,000 was returned, on which the court, after overruling a motion for a new trial, entered judgment and the defendant appealed.

The case now comes before us on the refusal of the Circuit Court to direct a verdict for appellant.

It is urged that the action of the court was wrong because the evidence adduced at the trial proved that appellee was not in the exercise of ordinary care for his own safety, and failed to prove that appellant owed him any duty which it omitted to perform, and because appellee had released the damages sued for.

The claim is that there was such a substantial failure of evidence tending to prove the cause of action charged in the declaration, or tending to invalidate the release signed by appellee, that no verdict for him could be suffered to stand, and that the direction should have been given. There were important differences between the testimony of appellee as given on the two trials; that given on the last trial being decidedly stronger for himself on the material matters of fact. He is a Swede, and there was some evidence tending to shows that perhaps at the first trial he did not fully understand the questions put to him, or was not accurately understood. These differences were fully set before the jury, and his credibility was peculiarly for them and the judge who approved the verdict. They had much better opportunities for judging of his credibility than we have, and they evidently gave him credit. The evidence before the jury in his behalf tended to prove substantially the following facts: Appellee had worked in the glucose factory for a former proprietor, and had worked there for appellant since March, 1889. His work was on the second, third and fourth floors. Just before December 8, 1889, he had been working on the day gang, and on that day, which was Sunday, he changed to the night gang. The factory ran night and day, and one hundred and forty men were employed. He came to the factory on that Sunday noon with his dinner pail, and met the foreman, who said that they did not have steam then and could not start the presses, and told him to go home and

come back at nine o'clock that evening and help Mr. Swan-
son set the presses. As stated in the former opinion, there
were two sets of stairs, the main stairway on the south side
near the east end, and the other on the north side about the
middle of the building. Each had successive flights above
each other to the stories above. Appellee went up the south
stairway to the second floor and crossed to the north stair-
way and went up to the fourth floor, where his working
clothes and lantern were, and left his dinner pail. He then
went home and at eight o'clock heard a whistle, which he
supposed to be for the hands, and got his supper and went
to the factory, where he arrived about nine o'clock. The
factory was dark, but there were some employes in the build-
ing. He went up by the south stairway to the third floor,
and there found his boss, Mr. Hade, and Mr. Swanson, whom
he was to assist, and some person whom he could not distin-
guish who had a light near the east end of the room. He
asked Hade if he had work for him and Hade replied that
they had lots of work as soon as they were ready; that they
had not got a light yet, and that he should go and change
his clothes and get his lantern and look after the press cloths
and get them ready. The factory was supplied with electric
lighting apparatus, but was not then lighted. Running
west from the south stairway, up which appellee had come,
there were presses along the south wall. North of them
and between them and the vacuum pans and pumps there was
a passage way which ran west to and along the elevator
which was its north boundary at the point where the eleva-
tor was located. West of the elevator the passage way
turned north and ran across the floor to the north stairway,
the elevator being in the angle. The elevator opening had
posts at the corners into which a railing two by four inches
was framed at the ends and fastened by nails as a protection
around the hole in the floor. The railing on the south side
along the passage way had been taken away that day, and
the elevator let down into the basement to raise a large
vacuum pan in sections. Appellant claims that the railing
was off on Saturday, when appellee was at work about there,

and the testimony of Erickson, the carpenter, and Linholm, the steam fitter, is relied upon to prove it; but Erickson testified that he did not remember seeing it off Saturday, and Linholm said that he could not swear to it. Appellee testified that he did not see it off, and Arthur McCarthy, an employe who saw it off Sunday, did not remember seeing it off before. On Sunday evening when it was time to quit work for the day Erickson, the carpenter, told Frank Bowers, who had charge of the carpenters and millwrights, that the railing ought to be fixed, and Bowers told him to do it the first thing in the morning. A section of the vacuum pan and the jack with which it had been elevated, occupied the south part of the passage way. When appellee was told to get his clothes and lantern, he started along this passage way, and Swanson walked behind him. Appellee held out his hands to find the railing and walked into the open elevator hole and fell. The route taken was the one customarily traveled by appellee, and which he testified was the safest and best, usually. It is claimed that the railing was frequently off, but the evidence on the last trial does not justify the claim. The manner of its construction shows that it was not designed to be opened in the prosecution of the current business of the factory. If it had been so designed it would surely have been made to lift or swing or would be removable like a bar; but it was fastened permanently with nails, and was not intended to be taken out except as any other permanent structure might be removed in case of necessity. It was sometimes removed for the purpose of putting in new and heavy fixtures requiring such removal, when it was again permanently fastened to the posts by nailing.

There is no evidence that it had been off recently before the accident. On this occasion it was necessary to take the railing off, but it was left off at night when no longer necessary, after attention had been specially called to it and when employes were expected to resume work that night. No warning was given of its condition, and there was no light to show the danger at a time when appellee had been ordered to be there and when he and other employes were expected

to go to work. These facts were sufficient to support a finding of negligence on the part of appellant.

Appellee came to the factory in pursuance of orders. He found others there and found his boss, who told him to get his clothes and lantern. The factory was dark, and he was going to get his light so that he could see to get the cloths ready for the presses. He took the usual route along the passage way where a railing was usually in place, permanently attached to the posts, without any notice of its being away. We are not prepared to say that the jury could not rightfully find that he was in the exercise of ordinary care.

Appellee was confined with his injuries for some time, and appellant paid his wife on pay days amounts equal to what his wages would have been, and when he got out of the house and went to the factory, the paymaster gave him $22.50, and took a release of damages on account of his injuries. There was no contradiction in the evidence as to the release. He could not read English and the release was not read to him, but he was led to believe that it was a paper to enable the paymaster to show where the money went. He was told that he should sign his name for the money and did so. The release was not fairly obtained, and did not operate to release the damages sued for.

The judgment will be affirmed.

*Judgment affirmed.*