### FINN v. IRONCLAD MFG. CO.

(Supreme Court, Appellate Division, Second Department. December 1, 1904.)

1. INJURY TO EMPLOYÉ—NEGLIGENCE.

Evidence in an action for injury to an employé from his stepping on a scrap of sheet iron in the narrow pathway leading from the employer's factory, at the sides of which such scraps from the factory were dumped daily, *held* sufficient to show negligence.

Woodward, J., dissenting.

Appeal from Special Term, Kings County.

Action by Joseph Finn against the Ironclad Manufacturing Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

John J. Kuhn, for appellant.
James C. Cropsey (F. W. Catlin, on the brief), for respondent.

PER CURIAM. Judgment and order affirmed, with costs.

BARTLETT, J., not voting.

WOODWARD, J. (dissenting). The plaintiff in this action was an employé of the defendant, and was injured on the 4th day of April,

1901, by a piece of sheet iron or tin alleged to have been negligently left in the pathway provided by the defendant for egress from its factory. It seems that the defendant, engaged in the manufacture of buckets, pails, etc., from sheet iron or tin, for reasons of its own had changed the method by which its employés left the factory at the close of the day about one week before the happening of this accident, and that the way pointed out ran through a passageway in the rear of the building, which was used as a dumping ground for the sheet iron and tin scraps which resulted from the manufacture of these goods; that these scraps, many of them with sharp points and angles, were piled up on either side of a pathway during the day, and that at intervals such scraps were taken away, so that there would be few of them remaining.   On the day in question, at about half past 5 o'clock, and while it was still light, the plaintiff, with others, was passing out through this passageway between the piles of scrap iron, which pathway is variously estimated at from 18 inches to 2 or 3 feet in width, and while, as he claims, his vision was obstructed by those in front of him, he felt something in his leg, and on making an examination he found that he had been injured by one of the sharp pointed pieces of scrap iron.   While the evidence is not very clear, and is in dispute, it is urged in support of the judgment that this piece of scrap iron was in the pathway, and that the plaintiff, with his vision obscured by those about him, stepped upon the iron in such a way that it rebounded or turned and struck him in the leg, inflicting the injury complained of in this action; and the negligence alleged against the defendant is that it permitted this piece of iron to remain in the pathway.

The principal question to be decided upon this appeal is raised by the motion of the defendant at the close of plaintiff's case, and renewed at the close of the evidence, to dismiss the complaint upon the ground that the evidence disclosed that the plaintiff assumed the risk of injury; that the defendant had provided a reasonably safe passageway for its employés; and that no negligence had been proven against the defendant; and on the ground that it appeared that there was another exit, and that the plaintiff did not have to go out this way.   The proposition urged particularly is that this was a case where the plaintiff, by continuing the employment with full knowledge of the method of conducting business on the part of the defendant, assumed the risks of the employment.   The plaintiff, while apparently conceding the rule of law relating to the assumption of those risks which are known and obvious, suggests that the "question of plaintiff's assumption of the risk is not raised by the pleadings.   Defendant's answer does not allege it as a defense or in any other way.   Hence it cannot avail the defendant.   The burden of proving that plaintiff assumed the risk, if that question is properly raised by the pleadings, is upon the defendant."   This view of the case finds some sanction in Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 459, 469, 472, 63 N. E. 541, but I am persuaded that the learned jurist writing in that case did not intend to deal with the question of practice, and that the language is a mere inadvertence, and this because both before and since the decision in the Dowd Case the courts have passed upon the question of assumed risks as a matter of law from the facts

developed upon the trial, and I have never known of a case in which this defense has been pleaded, or where it has been held to be a matter of affirmative defense. See Jenks v. Thompson, 179 N. Y. 20, 26, 27, 71 N. E. 266. In the case at bar there is no dispute that the plaintiff knew the practice of the defendant to throw its scrap iron into the passageway, and to pile it up on either side of the pathway, for the plaintiff himself had piled these scraps in this passageway; and, being a man of at least ordinary intelligence, the dangers to be anticipated from portions of these scraps falling into the pathway were as obvious and well known to him as they could have been to the defendant or any of its responsible agents or servants. It might be a fair question whether this accident was one which might have been reasonably anticipated by the defendant, and it is highly questionable whether the iron, conceding it to have been a menace to those using the pathway, had been in such pathway a sufficient length of time to give constructive notice to the defendant; for it is urged on this appeal that a large part, if not all, of the metal in the passageway on the day of the accident was placed there that day, and the plaintiff testifies that the piece of iron on which he was injured was not there the night before. The duty of the master is to use reasonable care; care governed by the dangers to be apprehended; and it can hardly be that it was the duty of the master, every afternoon before his employés left their work, to go out and inspect the passageway, to see that there were no scraps of iron, which, if stepped upon, would turn and injure the employé. Reasonable care, in view of the dangers to be apprehended, did not require this degree of diligence; and, if the scrap of iron was not in the pathway the night before, it is hardly proper to hold that the defendant had constructive notice of the danger, if it was such a one as it was bound to discover upon an examination. Simone v. Kirk, 173 N. Y. 7, 12, 65 N. E. 739. Indeed, so far as the evidence goes, the piece of iron which caused the injury may have been pulled down from the piles of scrap on either side by the plaintiff's fellow servants who preceded him from the factory, or it may have been dropped there by one of them. In order to show negligence on the part of the master, it is certainly necessary to show that the iron causing the injury had been there long enough so that he might, in the exercise of reasonable care, have discovered its presence; and the case is barren of such evidence. It may not have been there a minute, so far as the evidence discloses; and it is still necessary, as a matter of law, to prove the facts from which the inference of negligence may be drawn.

But aside from these reasons for reversing the judgment, I am persuaded that the plaintiff, who knew all of the facts and circumstances, had impliedly contracted to waive any carelessness on the part of the defendant in respect to the piling of these scraps in the passageway, and that the defendant, under such circumstances, is not liable as a matter of law, this defense being open without being pleaded, as it flows as a matter of course from the facts established upon the trial by either party, and this is evident from the Dowd Case, supra, for it is said (page 469, 170 N. Y., page 543, 63 N. E.): "The doctrine of assumed risks rests upon the implication of a promise by the employé to waive the conse-

quences of danger of which he is fully aware. It is distinct in principle from the doctrine of contributory negligence, although they have frequently been confounded by the courts. In many cases this was owing to the fact that it happened from the plaintiff's own showing that he knew of the dangers in advance, and hence his complaint was properly dismissed. Whether the fact of a known or obvious risk is proved by the one party or the other is immaterial, provided it is proved at all"—for, if the danger was known, then the master is not guilty of actionable negligence by continuing the custom or condition out of which the danger arises, for the servant, by remaining in the employ of the master, has assented to the conditions of the employment. Dowd v. N. Y., O. & W. Ry. Co., 170 N. Y. 469, 63 N. E. 541; Marsh v. Chickering, 101 N. Y. 396, 399, 400, 5 N. E. 56; Hickey v. Taaffe, 105 N. Y. 26, 37, 12 N. E. 286; Odell v. N. Y. C. & H. R. R. Co., 120 N. Y. 323, 325, 24 N. E. 478, 17 Am. St. Rep. 650, and authorities there cited.

There is no suggestion that the master ever promised to make any changes, or that the plaintiff had ever complained of the danger; so that the recent case of Rice v. Eureka Paper Co., 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, noting an exception to the general rule, has no bearing. A careful examination of the authorities convinces me that the defendant in the case at bar has not neglected any duty which it owed to the plaintiff, under the latter's own version of the facts. He knew all that the master knew—all that it was the duty of the master to know—about the method of getting out of the factory. He remained in the employ of the defendant without protest, with the facts all before him; and, having acquiesced in the conditions of the employment, the master did not owe him the duty of personally inspecting the passageway; certainly not where it was not shown that the immediate cause of the accident had been present long enough to give notice to a reasonably prudent man that danger was to be anticipated.

The judgment and order appealed from should be reversed, and a new trial granted.