OF THE

## STATE OF NEW JERSEY.

MARCH TERM, 1905

---

THEODORE HABER, PLAINTIFF IN ERROR, v. JENKINS RUBBER COMPANY, DEFENDANT IN ERROR.

Argued March 18, 1904—Decided June 26, 1905.

1. The duty of a master respecting the provision of a safe place of work for his workmen extends to providing a reasonably safe mode of entrance and exit from the place at which the workman is employed.
2. When a safe mode of entrance and exit is furnished, evidence of the use by some of the workmen of another mode of entering and leaving the place of employment will not impose a duty upon the employer to care for the safety of a workman who deviates from the path which such workman had been accustomed to use, and proceeds to another part of the grounds out of mere idle curiosity; when out of the path provided or customarily used, the employer owes the workman no duty of a higher degree than that which is due to a licensee.

---

On error to the Supreme Court.

For the plaintiff in error, *Benjamin M. Weinberg.*

For the defendant in error, *Edward F. Johnson.*

171

The opinion of the court was delivered by

MAGIE, CHANCELLOR.   The plaintiff in error, a minor, was a workman in the employ of the defendant company. While so employed he was injured by a discharge of steam from the boilers of the engines used in the work of the factory. The steam was purposely discharged during the noon hour, while the engines were not in operation.

To recover damages for his injury, this action was brought. At the close of the evidence produced by the plaintiff the trial judge directed a nonsuit, and this writ of error raises the question whether, in so doing, there was reversible error.

The evidence before the trial judge, when his direction was given, exhibited the following facts:

The building in which the defendant company conducted its work extended from Magnolia avenue, along Division street, nearly to the Central railroad of New Jersey. Back from the main building, in a westerly direction, was a wing, along the line of the railroad and back of the main building also, and nearly in its centre was an extension containing the boilers used in the generation of steam. Back of the boiler-room was a coal-bin, in which the coal used was stored. The distance between the above-mentioned wing and the boiler-room was about fifty-seven feet. The factory site was enclosed by a fence, and at the southwest corner was a pair of gates, through which coal cars from the Central railroad were drawn on a switch into the company's land, to the coal-bin at the rear of the boiler-room.

The usual entrance for those who worked in the factory was by a door in another wing of the main building, extending on Magnolia avenue. That door opened into a passage in which was a time-clock. Each workman was required, when coming in, to touch a button having his number on it, and thereby automatically register the time at which he went to work. He was also required to register the time at which he left at noon, and the time at which he returned after the noon hour. That passage led to the main building and afforded access for the workmen to their several places of

employment. There were some workmen, among whom was the plaintiff in error, who lived in localities which could more readily be reached than by going through the main building and the passage to Magnolia avenue. There was a door in the wing first mentioned, from which access could be obtained to the space of fifty-seven feet lying between that wing and the boiler-house, and those using it could thence proceed to the gates at the southwest corner of the land, provided for the entrance of cars on the switch, and so reach the Central railroad track.

At the time the plaintiff received the injury for which he sought compensation he had been absent at the noon hour and had returned. He entered the gates last mentioned and proceeded toward the door in the wing, intending, as he says, to there enter the factory and pass through the main building to the passage and the time-clock, to register his time. · On his way to the door he perceived something glittering upon the ground near the boiler-room and the coal-bin. He says it was like a ten-cent piece, and he went to pick it up, but found that it was a bit of tin. As he went to start off, he says, "the steam hit me."

The direction for a nonsuit was rested by the trial judge upon two grounds—*first,* that the company owed no duty to plaintiff respecting his safety at the spot at which he was injured; and *second,* that the daily discharge of the steam from the blow-off pipe was an obvious danger, which could and would have been observed by the plaintiff, and the risk of which he must be considered to have assumed.

The duty of the master to take reasonable care that the places in which his workmen are required to work are reasonably safe is involved. The plaintiff was not actually at work, but obviously the master's duty extends to providing reasonably safe access to the place in which the workman is to work. The applicability of this doctrine is not contested. The only question is whether it extends so as to make the master liable under the circumstances above stated.

If the injury to plaintiff had been inflicted by the escape of steam while he was passing from the southwest gates to

the door in the wing by the most direct path, a different question might possibly have been presented. Although the evidence disclosed that the way provided for entrance and exit of workmen was from Magnolia avenue and was entirely safe, yet upon the proof it might have been a question for the jury whether, from the custom of some of the workmen in leaving by the door in the wing and proceeding to the southwest gates in going and returning, there was not an implied invitation to the workmen to make use of such passage. But that question was not raised by the admitted facts. Plaintiff was not passing from the gates to the wing. He deviated from that course and passed across to the vicinity of the boiler-house for no purpose of proceeding to his work, but because attracted by a shining object upon the ground. He must therefore have passed about fifty feet out of the most direct way to the door in the wing. He was therefore neither working for the defendant company at the time nor proceeding to the place where he was to work with the intention of resuming work. When he deviated from the path, the use of which it might possibly be considered he was invited to make, he lost the protection of such implied invitation and became either a trespasser, or, at the most, a mere licensee, to whom the defendant company owed no duty except to abstain from willful injury. Upon these facts the lack of any duty due from the defendant company to the plaintiff was plainly disclosed, and as the liability of the defendant could only be evinced by proof of duty neglected the course of the trial judge in directing a nonsuit was entirely proper.

The judgment before us must therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 11.

*For reversal*—None.