CHELENTIS v. LUCKENBACH S. S. CO., Inc.

(Circuit Court of Appeals, Second Circuit.   May 25, 1917.)

No. 223.

SEAMEN €══11—INJURY IN SERVICE—MEASURE OF RECOVERY.

> The rights of a seaman, injured in the service of the ship, are the same, by virtue of the inherent nature of his contract, whether he sues in a court of admiralty or of common law, and his recovery is limited to his wages to the end of the voyage and the expense of his maintenance and cure, regardless of the question of negligence or contributory negligence; and this rule is not changed by Seamen's Act March 4, 1915, c. 153, § 20, 38 Stat. 1185 (Comp. St. 1916, § 8337a), providing that "in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow servants with those under their authority."

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Peter Chelentis against the Luckenbach Steamship Company, Incorporated.   Judgment for defendant, and plaintiff brings error.   Affirmed.

Silas B. Axtell, of New York City (F. R. Graves, of New York City, of counsel), for plaintiff in error.

Carter & Carter, of New York City (Peter Carter, of New York City, of counsel), for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge.   This was an action at common law by a seaman employed on the steamer J. L. Luckenbach against her owners to recover damages for personal injuries sustained by him on his second voyage.   The only charge of negligence in the complaint as to which there was any proof was as follows:

"* * * Because said defendants and said persons in their service having command negligently and unlawfully compelled plaintiff to carry an ash bag across an open and exposed deck on board said vessel during a severe storm and while the waves were calculated to and did break over the same, plaintiff, although himself in the exercise of due care, was suddenly and without warning struck by a wave with great violence and precipitated from his feet, thereby sustaining severe, painful, and permanent personal injuries, as hereinafter more particularly set forth."

The plaintiff sued for full indemnity, and on the trial declined to make claim for wages to the end of the voyage and expenses of cure and maintenance for a reasonable time thereafter, insisting that by virtue of section 20 of the Seamen's Act of March 4, 1915, he was entitled to full indemnity and to go to the jury on the question of the defendant's negligence and of his own contributory negligence.   This section reads:

"Sec. 20. That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow servants with those under their authority."

€══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Judge Manton directed a verdict for the defendant, relying on the decision of the Supreme Court in The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760.

December 26, 1915, the plaintiff, Chelentis, a fireman, was in the watch of Snell, the second engineer, 12 to 4 a. m. At 4 a. m. he came on deck, in accordance with the regular practice, to rest for half an hour and then with his mate to take the ashes raked from the fires by the 4 to 8 watch and put into bags lifted by machinery from the stokehole to the grating in the fireroom level with the deck. One man would take a bag off the hoist and deliver it to his mate, to be carried by him through the port door of the fireroom out on deck and dumped over the port side.

The only ash hoist was on the port side and there was a coal bunker running across the grating in the fireroom from side to side. The cross bunker did not prevent any one from going through the port door of the fireroom to the port side, but if the bags were to be dumped on the starboard side a third man would be needed, viz., one to take the bag from the hoist and deliver it to another, to carry it to and pass it over the cross bunker to a third, to carry it from there to the door on the starboard side and dump it over.

At 4:30 a. m. the plaintiff and his mate went to the engineroom and asked Keyser, the first assistant engineer in charge of the watch, to give them a third man, so that they could dump the ashes over the starboard side, the sea being so high on the port side as to make it dangerous to dump them there. This they testified he refused, with oaths, and drove them out of the engineroom, ordering them to do the work as usual. As the plaintiff was returning to the ash hoist after emptying his first bag over the port side, a wave struck him and carried him over to the starboard side, causing him very severe injuries.

The defendant contended that Snell should have been on deck supervising this operation of dumping the ashes by the men in his own watch, and that the plaintiff was not in Keyser's watch or subject to his orders. But the evidence is that Keyser was giving him orders, and we are clear that Snell's watch were bound to obey him. After the accident three men were employed and the ashes were dumped over the starboard side.

December 27th the steamer arrived in port and the plaintiff was taken to the Marine Hospital, where he remained three months and four days; it being found necessary to amputate his right leg six inches above his knee.

The contract of a seaman is maritime, and has written into it those peculiar features of the maritime law that were considered in the case of The Osceola, supra; and although, because of these peculiarities, such contracts are almost invariably litigated in admiralty courts, still the contract must be the same in every court, maritime or common-law. The only difference between a proceeding in one court or the other would be that the remedy would be regulated by the lex fori. If a seaman, who had been locked up or put in irons for disobedience of orders, were to sue the master for damages in a court of common law, he could not recover like a shore servant, such as a cook or chauffeur,

who had received the same treatment. So a seaman, bringing suit in a common-law court for personal injuries, could recover, even if guilty of contributory negligence, although a shore servant, suing in the same court, could not; and a seaman, suing in a common-law court for personal injuries, could recover (except in the case of unseaworthiness of the vessel or failure to give proper care and medical attention) only wages to the end of the voyage and the expenses for maintenance and cure for a reasonable time thereafter, whereas in a similar case a shore servant would be entitled to recover full indemnity. Therefore, by virtue of the inherent nature of the seaman's contract, the defendant's negligence and the plaintiff's contributory negligence were totally immaterial considerations in this case; the sole question for the jury to determine being whether the plaintiff was entitled to recover because he had not received from the defendant his wages to the end of the voyage and the expense for his maintenance and cure for a reasonable time thereafter.

Has Congress changed the situation by section 20, of the Seamen's Act, supra, as the plaintiff contends? He argues that the act makes the master a fellow servant of the seaman, and therefore that Congress intended to make the relation between the seaman and all the officers throughout the same as at common law. But the Supreme Court, in the case of The Osceola, supra, while reserving the question whether the master and seaman were fellow servants, held that it made no difference whatever in respect to the liability of the shipowners for an improvident order of the master which resulted in personal injuries to the seaman. This was the precise question decided. The facts were that the master ordered a gangway to be hoisted by a derrick and swung outboard when the steamer was proceeding in a strong head wind, so that she might be ready for an immediate discharge of the cargo on arrival. The gangway, as soon as it swung clear of the side, was turned broadside by the wind and threw down the derrick, which struck and injured the libelant. The first and third questions certified to the Supreme Court were answered, "No":

"First. Whether the vessel is responsible for injuries happening to one of the crew by reason of an improvident and negligent order of the master in respect of the navigation and management of the vessel."

"Third. Whether as a matter of law the vessel or its owners are liable to the appellee, Patrick Shea, who was one of the crew of the vessel, for the injury sustained by him by reason of the improvident and negligent order of the master of the vessel in ordering and directing the hoisting of the gangway at the time and under the circumstances declared; that is to say, on the assumption that the order so made was improvident and negligent."

It follows that whether the master and seaman are follow servants or not is quite immaterial in the case of a suit for injuries resulting from an improvident order of the master. For this reason the court was right in directing a verdict for the defendant, and the judgment is affirmed.