## THE COLUSA.

(Circuit Court of Appeals, Ninth Circuit. February 4, 1918.)

No. 3043.

1. Depositions ☞90—Objections—Waiver—"Competent Evidence."

While the deposition of a witness will not ordinarily be admitted when he is present, a deposition taken under a stipulation that it might be read in evidence by either party, and that all objections were waived unless made at the time of taking the deposition, but that objections to materiality and competency were reserved, is admissible, without any showing that the witness was not within the jurisdiction, for the reservation of objections to the materiality and competency of the testimony was not a reservation of objections to the deposition as a whole; "competent evidence" being that which the very nature of the thing to be proved requires as the fit and appropriate proof in the particular case.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Competent Evidence.]

2. Seamen ☞29(5)—Injuries—Evidence—Sufficiency.

In an action by a seaman, injured while setting up the lashings to secure a deckload of lumber, evidence *held* to show that the injury resulted from a defective turnbuckle hook, which opened when the link encircling its shank slipped off as the result of the falling out of a nail used to close it.

3. Seamen ☞29(3)—"Seaman Having Command"—"Fellow Servant."

Under Seamen's Act March 4, 1915, c. 153, § 20, 38 Stat. 1185 (Comp. St. 1916, § 8337a), declaring that, in any suit to recover damages for any injuries sustained on board a vessel, or in its service, seamen having command shall not be held fellow servants with those under their authority, a boatswain, who directed a seaman to set up deck lashings to secure a deckload of lumber, and under whose orders the seaman was acting, must be deemed a "seaman having command" and not a "fellow servant."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fellow Servant.]

4. Seamen ☞29(2)—Injuries—Defective Appliances.

Both the vessel and the owner are liable to an indemnity for injury received by a seaman in consequence of the unseaworthiness of the vessel, or failure to supply and keep in order proper appliances appurtenant thereto; therefore a vessel and its owners are liable to a seaman who suffered injuries as the result of a defective turnbuckle hook, which was part of the deck lashings, and which opened while the lashings were being tightened.

5. Seamen ☞29(4)—Risks—Assumption of Risk.

As a seaman, after a vessel leaves port, cannot, as can an ordinary workman on shore, leave his work if he apprehends injury, a seaman does not assume the risk resulting from a defective appliance, which the owners, in the exercise of high diligence and care, might have discovered.

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Libel by George I. Dunwoody against the American Steamship Colusa and another. From a decree for libelant (241 Fed. 968), respondents appeal. Affirmed.

Goodfellow, Eells, Moore & Orrick, of San Francisco, Cal., for appellants.

F. R. Wall, of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The appellee, a seaman on the steamship Colusa, as the steamship was leaving port, was directed by the chief mate to set up the deck lashings to secure a deckload of lumber. The lashings consisted of two chains, each with one end fastened to one of the sides of the ship, and brought together in the center of the deckload by means of a turnbuckle, an appliance about five feet long, which was attached to one of the chains and had at the other end a hinged hook, in which the end of the opposite chain was inserted; the hook being prevented from opening by means of a slip link or ring, which encircled the shank of the hook and the hinged portion thereof, and was prevented from slipping off the end thereof by means of a nail, which was inserted through a hole bored through its outer end. The rod of the turnbuckle was threaded at each end, and by means of a pipe wrench it was turned for the purpose of drawing the chains tightly together, to secure the deckload to the ship. The hook had been adjusted by the boatswain, who was directing the operations, and under his direction the appellee was engaged in turning the rod, when the nail fell out of the hole, and the ring being thereby released, slipped off the hook, and the hook opened, releasing the chains, and the recoil thereof threw the appellee from the top of the lumber through an open hatchway and into the hold, whereby he sustained serious injuries.

The court below found that the accident was due to the negligence of the boatswain in placing in the hole a nail, which might slip out, instead of a split pin, which would not, and then directing the libelant to tighten the lashings, and that the boatswain, under the circumstances, was a seaman having command within the meaning of the Act of March 4, 1915, known as the Seamen's Law, that the negligence was not wholly that of the boatswain, because he testified that there were no pins provided, and that it was consequently necessary to use nails.

[1] We find no merit in the contention that the trial court erred in admitting in evidence the deposition of the appellee's witness Dallman. The deposition was taken on December 29, 1916, and it was offered in evidence before the conclusion of the trial some three months later. The objection made to its admission was, first, that there was absence of showing that at the time when it was offered, the witness was not within the jurisdiction of the court; and, second, that from the face of the deposition it appeared that it was contemplated by both parties to the suit that the witness should be produced at the trial if he were not then at sea. It is true that there was no showing that the witness was not within the reach of the process of the court at the time of the trial, and that the rule is as stated in 13 Cyc. 986:

"In general, in the absence of agreement or waiver, the deposition of a witness will not be admitted when he is present and capable of being examined," to which are cited, among other authorities, Whitford v. Clark County, 119

U. S. 522, 7 Sup. Ct. 306, 30 L. Ed. 500, and Texas & P. Ry. Co. v. Watson, 112 Fed. 402, 50 C. C. A. 230.

But in 13 Cyc. 987, it is said that the preliminary proof of the absence of the witness must be made before the deposition can be used, "unless the adverse party has dispensed with the necessity of such proof by expressly or impliedly waiving it."

In this case the deposition was taken upon a stipulation which recited that, when written up, it "may be read in evidence by either party on the trial of the cause," and that all objections to the form of questions are waived, unless objected to at the time of taking the deposition, but that "all objections to the materiality and competency of the testimony are reserved to all parties." This was an express waiver on the part of the appellant of its right to object to the admission of the deposition for failure to show that the witness was not within reach at the time of the trial. The reservation of a right to object to the "materiality and competency" reserved the right to object only to the materiality and competency of any item of the testimony contained in the deposition, and not to the admissibility of the deposition as a whole. "Competent evidence is that which the very nature of the thing to be proved requires as the fit and appropriate proof in the particular case, such as the production of a writing where its contents are the subject of inquiry," etc. 12 C. J. 235.

While counsel for the appellant on the taking the deposition expressed a desire to have Dallman present on the trial of the cause for the purpose of identifying the turnbuckle, there was no promise on the part of appellee's counsel to produce him, and the appellant took no means, by subpœna or otherwise, to secure his presence on the trial.

[2] Also without merit is the contention that the evidence failed to show negligence on the part of the appellants, and that there was no proof of the cause of the accident. There was ample proof that at the time when the accident occurred the turnbuckle hook had been closed over the end of the chain, and the ring had been slipped over the end of the hook, and a nail inserted through the same. The boatswain testified that he put the nail in place, and another witness testified that he saw it after it had been inserted. The testimony was that the nail fitted loosely in the hole, and would drop out when the hook was reversed by turning the rod, and that there was no appliance that could be used other than the nail. The chief officer testified that he was standing on the chain on the port side, when all of a sudden he felt the chain give way, looked back, and Dunwoody had disappeared. It was not disputed that after the accident the turnbuckle hook was found open; the nail having fallen out, and the ring having slipped off. Dallman testified that he had complained to the mate of the turnbuckle that was used, and that the mate had said that it was not fit to be there.

[3, 4] It is contended that the negligence, if any, was that of a fellow servant of the appellee, that the officer in charge and control of the appellee was the mate, and not the boatswain, and that the boatswain was not a seaman having command within the meaning of the Act of March 4, 1915, known as the Seamen's Act. The court below found, and the evidence sustained the finding, that the appellee at the time of his in-

jury was acting under the orders of the boatswain. The boatswain testified that he was in charge of the work, and that all the sailors in the group or gang that were working there were under his authority, and that he told the appellee to tighten up the turnbuckle; that he was in charge of the men, and that when he gave them orders they had to obey. This, we think, was sufficient to constitute the boatswain a seaman having the command; but, as we view the case, it is not material whether he was such officer or not. The primary cause of the accident was not the act of the boatswain in inserting the nail in the turnbuckle, but was the fact that the turnbuckle so used was defective, and known by the chief officer to be defective, and was the appliance which the appellee was required to use in his work. The evidence was that a nail loosely inserted through the hook was the only appliance that ever had been used in connection with the hook, and that there was no split bolt available for that purpose.

Section 20 of the Seamen's Act of March 4, 1915 provides:

"That in any suit to recover damages for any injury sustained on board vessel or in its service seamen having command shall not be held to be fellow servants with those under their authority." Comp. St. 1916, § 8337a.

In Chelentis v. Luckenbach S. S. Co., 243 Fed. 536, 156 C. C. A. 234, a case in which the injury to the seaman resulted from the improvident order of an inferior officer in the course of navigation, the Circuit Court of Appeals for the Second Circuit held that section 20 of the act did not change the rule, affirmed in The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760, that seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure; and the court in that case, while reserving the question whether the master and seamen were fellow servants, held that it made no difference whatever in respect to the liability of the shipowners for an improvident order of the master which resulted in personal injuries to the seaman. But for the purposes of the present case we need only to refer to the rule which in the Osceola Case was declared to be settled law:

"That the vessel and her owner are, both by English and American law, liable to an indemnity for injury received by seamen in consequence of the unseaworthiness of the ship, or of failure to supply and keep in order the proper appliances appurtenant to the ship."

That rule, we think, is applicable here. The defect in the turnbuckle, if not obvious, was discernible by the exercise of reasonable care.

[5] It is contended that the appellee assumed the risk of the injury. But the ordinary rule which applies to assumption of risk by a workman is not applicable to the case of a seaman on board ship. In The Edith Godden (D. C.) 23 Fed. 43, Judge Brown said:

"A seaman on board ship has not the privilege of using his own judgment, or of quitting the ship's service if he apprehends danger, like an ordinary workman on shore. If owners cannot be held as insurers of the appliances furnished to the ship for the safety of seamen, they ought, at least, to be held to the strictest rule of diligence and care."

So in Lafourche Packet Co. v. Henderson, 94 Fed. 871, 36 C. C. A. 519, the Circuit Court of Appeals for the Fifth Circuit held that a sea-

man does not assume the risk involved in the use, under orders, of patently defective appliances furnished him by the master. And the same was held by this court in The Fullerton, 167 Fed. 1, 92 C. C. A. 463.

The appellant cites the case of The Scandinavia (D. C.) 156 Fed. 403, in which it was held that the doctrine of assumption of risk is applied in admiralty as fully as in other branches of jurisprudence. But in that case the libelant was injured, not as a seaman at sea, but while engaged in assisting in the repair of a vessel while she lay at a wharf for repairs. There was nothing to prevent him from leaving his employment. The court said:

"If the ship, or any of its tackle and apparel, did not suit him, he was at liberty to leave at any moment. The familiar law with respect to the duty of a seaman to obey the orders of the master has no application here; for the libelant was not at sea. He was under no captain."

The decree is affirmed.