# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## COLONNA SHIPYARD, INC. v. WILLIAM H. BLAND.

### June 14, 1928.

Argued and submitted before Judge Holt took his seat.

1. ADMIRALTY—*Maritime Torts—Injury Suffered by Repairing Ship at Dock in Navigable Water.*—An injury suffered by a mechanic through the negligence of his master, while repairing a ship at a dock in navigable water of the United States, is a maritime tort and cognizable in admiralty.

2. ADMIRALTY—*Jurisdiction—Saving of Common-Law Remedy—Case at Bar.*—Section 9 of the judiciary act of 1789 (chapter 20, 1 Stat. at L. 76), U. S. Judicial Code, sections 24 and 256, preserves a common-law remedy in the State courts in admiralty and maritime causes where the common law is competent to give it. Therefore, the instant case, an action for injuries to a mechanic through the negligence of his master while repairing a ship at a dock in navigable waters of the United States, was properly brought in the State court.

3. ADMIRALTY—*Action for Maritime Tort in Common-Law Court—Words and Phrases—Rights and Remedies Distinguished.*—A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury. Under section 9 of the judiciary act of 1789 (chapter 20, 1 Stat. at L. 76), U. S. Judicial Code, sections 24 and 256, a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law; but nothing therein reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than the maritime law.

4. ADMIRALTY—*Jurisdiction—Action in State Courts—Whether Common-Law Rules are Applicable.*—In cases of maritime tort the general rules of the maritime law apply whether the proceeding be instituted in the admiralty or common-law court.

5. ADMIRALTY—*Jurisdiction—Action in State Courts—Whether Common-Law Rules are Applicable.*—When one suffers an injury under such circumstances as to be a maritime tort, his rights are fixed by the admiralty law; but he may choose the forum in which to assert those rights. He has his remedy at common law, but his recovery

and the precise relief to be afforded him are determined by the admiralty law which is applied, whether he sues in the common-law or the admiralty court. He may pursue his remedy at common law in the State court, but that court must administer the admiralty law. He may select his court, but cannot add to or change his rights or the defendant's rights which are the same in both forums.

6. ADMIRALTY—*Jurisdiction—Action in State Courts—Whether Common-Law Rules are Applicable—Contributory Negligence—Case at Bar.*— The instant case was an action by a ship carpenter against his employer for injuries received in the course of his employment while working on the repairs of a vessel moored in navigable waters of the United States. The trial court refused to instruct the jury that contributory negligence would be an absolute bar to the action, but instructed them, on the contrary, in accordance with the admiralty rule, that if they believed from the evidence that the injuries received by the plaintiff were the result of negligence on the part of both the plaintiff and the defendants, they should apportion the loss against both the plaintiff and the defendants, and that such negligence on the part of the plaintiff should mitigate the damages which they would otherwise find for the plaintiff.

*Held:* That the court's instruction was a correct presentation of the law governing the case.

7. MASTER AND SERVANT—*Negligence of Master—"Simple" or "Common Tool" Doctrine.*—It is well settled that the employer is under no obligation to his servants to inspect, during their use, those common tools and appliances with which every one is conversant; and that it is not the master's duty to repair defects arising in the daily use of such appliances.

8. MASTER AND SERVANT—*Negligence of Master—"Simple" or "Common Tool" Doctrine—Ladder—Case at Bar.*—The instant case was an action by a ship carpenter against his employer for injuries sustained by him in the course of his employment by falling from a ship's ladder. The evidence was sufficient to show that the ladder, though in use, was unsafe and unsuitable. There was a verdict for plaintiff and defendant contended that the court erred in refusing to set aside the verdict because there was no evidence that defendant was guilty of any negligence. This contention was based upon what is generally spoken of as the "simple" or "common tool" doctrine.

*Held:* That while this doctrine is well settled, it could not be applied to the instant case. The defective ladder which caused the injury in the instant case was not such an appliance, was not a tool. On the contrary, it was rather a place, the equivalent of a staircase.

9. MASTER AND SERVANT—*Negligence of Master—"Simple" or "Common Tool" Doctrine—Ladder.*—The ladder cases in which it is held that the employer has discharged his duty if he supplies the servant with

proper material for the construction of the ladder, of which he has custody and which he is to use, have no application to the instant case, where the employee was injured by falling from a ship's ladder, which apparently belonged to the ship as part of its equipment, which, though in use, was unsafe and unsuitable. Nor do those cases apply in which the ladder itself is supplied by the master ready for the use of the servant. The master's duty is discharged in such case if the ladder is reasonably safe when delivered to the employee for use.

10. Master and Servant—*Duty to Furnish Safe Place in which Servants are Required to Work—Safe Entrance and Egress.*—As a rule the employer is required to provide for the safety of all that portion of his premises where his employees are required to labor and such of the places thereon as they are expressly or impliedly invited and premitted to use. It is well established that this obligation extends to the places of entrance and exit from the place where the work is performed.

11. Master and Servant—*Safe Place to Work—Defective Ladder—Case at Bar.*—In the instant case a ship carpenter engaged on the repair of a vessel was injured by falling from the ship's ladder while descending to the hold. The ladder, because of its structural weakness, tilted, sagged, or buckled on its weak side, and this caused the fall and injuries to plaintiff. The ladder was in no sense an appliance entrusted to the plaintiff for use in connection with his work. He had not constructed it, it was not in his custody, it was accessible to others, he had no reason to doubt its sufficiency, and was not charged with any specific duty to inspect it. It was like a stairway, merely his means of access to his work in the hold of the ship, which his employer directed him to use, and this direction imposed upon the employer the duty to exercise reasonable care to see that it was a reasonably safe means of access.

*Held:* That the court could not say, as a matter of law, that the defendant was free from negligence. The most that could be said was that the questions of original and contributory negligence were questions of fact to be submitted to the jury.

Error to a judgment of the Court of Law and Chancery of the city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Sinnott, May & Leaman,* for the plaintiff in error.

*Ernest S. Merrill,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

William H. Bland was a ship carpenter, employed by Colonna Shipyard, Incorporated.   He sustained serious and permanent injuries to his head, hips and back by falling from a ship's ladder while acting in obedience to orders of his employer and in the course of his work. He has recovered a substantial verdict against the defendant, Colonna Shipyard, Incorporated (employer), which is here assigning error.

The circumstances of the injury are these:   The steamship "Gloucester," a fishing vessel owned by Marine Products, Incorporated, having been damaged by fire, was brought to the repair yard of the defendant for repairs.   While at the repair yard, afloat in the Elizabeth river, a navigable stream of the United States, the plaintiff was required to go into the hold of the ship to build foundations for ammonia tanks, to be used in connection with refrigeration.   The way of access provided for him from the deck through the hatchway to the hold of the ship was by a ladder fourteen or fifteen feet long, the foot of which was scotched or so fastened to the botton of the hold as to keep it from sliding, while the top was resting against one of the sides or coaming of the hatchway.   The ladder was old, one side of it had broken and been repaired by patching or splicing on that side and was weak.   The evidence is quite sufficient to show that the ladder, though in use, was unsafe and unsuitable. It apparently belonged to the ship as a part of its equipment, and was movable within the hatchway, an opening twelve feet wide and twenty-four feet seven inches long.   The plaintiff, with his tool box, weighing

twenty-five or thirty pounds, was descending to the hold when the ladder, because of its structural weakness, tilted, sagged, or buckled on its weak side, and this caused his fall and injuries.

[1] That an injury suffered by a mechanic through the negligence of his master, while repairing a ship at a dock in navigable water of the United States, is a maritime tort and cognizable in admiralty is perfectly well settled.

Among the latest authorities on this point is *Great Lakes Dredge & Dock Co.* v. *Sophia Kierejewski*, 261 U. S. 479, 43 S. Ct. 418, 67 L. Ed. 756. That was an action to recover damages for the death of one employed to make repairs on a vessel moored in navigable waters of the United States, who, while standing on a scaffold on a float alongside of a vessel, fell into the water and was drowned, because of the negligent operation of an approaching tug, and it was held to be within the admiralty jurisdiction of the Federal courts. A number of authorities are cited in the opinion, and there is no longer any doubt of the admiralty jurisdiction in such a case.

In *Frank Gonsalves* v. *Morse Dry Dock & Repair Co.*, 266 U. S. 171, 45 S. Ct. 39, 69 L. Ed. 228, it is held that admiralty has jurisdiction of an action for injury to an employee by the explosion of a blau torch while he was engaged in repairing the shell plates of a steamer in a floating dock in navigable water. The locality of such a tort determines the jurisdiction.

[2] It is provided by section 9, judiciary act of September 24, 1789 (Chapter 20, 1 Stat. at L. 76), that the United States district courts shall have "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction  *  *  *  saving to suitors in all cases the right of a common-law remedy where

the common law is competent to give it." This statute so saving the common-law remedy, has been re-enacted in the Judicial Code, sections 24 and 256 [28 U. S. C. A. sections 41(3), 371(3)] and preserves to such litigants a common-law remedy in the State courts; so that this action is clearly authorized thereby. It has been frequently construed. *Chelentis* v. *Luckenbach Steamship Co.*, 156 C. C. A. 234, 243 Fed. 536, L. R. A. 1918F, 991; same case, 274 U. S. 383, 38 S. Ct. 501, 62 L. Ed. 1171; *Robins Dry Dock, etc., Co.* v. *Dahl*, 266 U. S. 449, 45 S. Ct. 157, 69 L. Ed. 373.

(a) The first assignment of error here and the one chiefly argued and relied upon, depends upon the proper construction of this statute. For the defendant company it is contended that the relief to be afforded in the Virginia courts when pursuing the common-law remedy which is saved or allowed, must be according to the rules of the common law—specifically, that contributory negligence of the plaintiff is a complete defense in such an action; whereas, for the plaintiff, it is contended that the relief afforded by the common-law remedy must nevertheless accord with the rules of admiralty, and that such contributory negligence only mitigates or reduces the damages. There has been a sharp difference of opinion and some conflict of decision on such questions. *Larson* v. *Alaska Steamship Co.*, 96 Wash. 665, 165 Pac. 880, L. R. A. 1917F, 671. A note to that case in L. R. A. 1917F, 678, cites the authorities as they appeared to the annotator at the time the note was prepared. Since then, however, the Supreme Court of the United States has considered and determined the question, so that now the debate should be considered closed.

In *Southern Pacific R. Co.* v. *Jenson*, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451,

Anno. Cas. 1917E, 900, 14 N. C. C. A. 597, it is definitely ruled that the statute gives no authority to the several States to enact legislation which would operate to create material prejudice to the characteristic features of the maritime law, or interfere with the proper harmony and uniformity of that law in its international and interstate relations.

In *The Moses Taylor Case*, 4 Wall. 431, 18 L. Ed. 402, it was said: "That clause only saves to suitors the right of a common-law remedy, where the common law is competent to give it." It is, therefore, only the privilege to prosecute for a maritime tort in the common-law courts which is saved. It is not the right of election to determine that the defendant's liability is to be measured by common law, rather than by maritime standards.

[3] In *Chelentis* v. *Luckenbach Steamship Co.*, *supra*, this is said in concluding the discussion: "The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury. Bouvier's Law Dict. Plainly, we think, under the saving clause, a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law; but we find nothing therein which reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than the maritime law. Under the circumstances here presented, without regard to the court where he might ask relief, petitioners' rights were those recognized by the law of the sea."

[4] In *Carlisle Packing Co.* v. *Sandanger*, 259 U. S. 259, 42 S. Ct. 476, 66 L. Ed. 930, there is this unequivocal statement: "The general rules of the maritime law

apply whether the proceeding be instituted in the admiralty or common-law court." *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 159, 40 S. Ct. 438, 64 L. Ed. 838, 11 A. L. R. 1145; *Engel* v. *Davenport,* 271 U. S. 33, 70 L. Ed. 813, 46 Sup. Ct. 419.

In the recent case of *International Stevedoring Co.* v. *Haverty,* 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, it is held that a longshoreman employed by a stevedore in loading freight in the hold of a ship is a "seaman," within the meaning of the act of June 5, 1920, chapter 250, section 33, 41 Stat. at L. 988, 1007, Comp. Stat., section 8337a, Fed. Stat. Anno. Supp. 1920, page 227 (46 U. S. C. A. section 688), providing that "any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The question there was whether the fellow-servant rule would defeat the plaintiff's recovery, and in this connection it is said: "It is true that for most purposes, as the word is commonly used, stevedores are not 'seamen.' But words are flexible. The work upon which the plaintiff was engaged was a maritime service formerly rendered by the ship's crew. *Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 62, 34 S. Ct. 733, 58 L. Ed. 1208, 1212, 51 L. R. A. (N. S.) 1157. We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship. The policy of the statute is directed to the safety of the men and to treating compensation for injuries to them as properly part of the cost of the

business. If they should be protected in the one case, they should be in the other. In view of the broad field in which Congress has disapproved and changed the rule introduced into the common law within less than a century, we are of opinion that a wider scope should be given to the words of the act, and that in this status 'seamen' is to be taken to include stevedores employed in maritime work on navigable water, as the plaintiff was, whatever it might mean in laws of a different kind."

The latest case of which we have any knowledge is *Messel* v. *Foundation Company*, 274 U. S. 427, 47 S. Ct. 695, 71 L. Ed. 1136. Messel was an employee of the Foundation Company as a helper to a boiler maker. He was sent with the boiler maker on board the steamship "La Grange," then afloat on the Mississippi river at New Orleans. The task to be performed was to add eight feet to the smokestack of the steamer. The two men were furnished ladders to ascend to the top of the stack, and while engaged in the work, Messel was brought directly over the mouth of the steam escape pipe running from the engine room. While he was so engaged, scalding steam was allowed to escape from the pipe. It overcame him and inflicted serious injuries. In that case it is shown that in such cases of maritime torts clearly cognizable in admiralty, the State workmen's compensation act cannot be applied, because this would introduce lack of uniformity. It was also held in that case, reversing the State court, that the plaintiff might prosecute his remedy in the State court for the tort, but that the principles applicable to the recovery, should he succeed, "must be limited to those which the admiralty law of the United States prescribes, including the applicable section of the Federal employers liability act incorporated in the mari-

time law, section 33, chapter 250, 47 Stat. 988, 1007."
This case, as we understand it, closes the discussion.

[5] When one suffers an injury under such circumstances as to be a maritime tort, his rights are fixed by the admiralty law; but he may choose the forum in which to assert those rights. He has his remedy at common law, but his recovery and the precise relief to be afforded him are determined by the admiralty law which is applied, whether he sues in the common-law or the admiralty court. He may pursue his remedy at common law in the State court, but that court must administer the admiralty law. He may select his court, but cannot add to or change his rights or the defendant's rights which are the same in both forums.

[6] The trial court, in this case, observed this rule, refused to instruct the jury that contributory negligence would be an absolute bar to the action, but instructed them on the contrary in accordance with the admiralty rule, that if they believed from the evidence that the injuries received by the plaintiff were the result of negligence on the part of both the plaintiff and the defendants, they should apportion the loss against both the plaintiff and the defendants, and that such negligence on the part of the plaintiff should mitigate the damages which they would otherwise find for the plaintiff.

This was the correct instruction to be given in this case, and the first assignment of error is not well taken.

[7] (b) It is also contended that the court erred in refusing to set aside the verdict here because contrary to the law and the evidence. The claim is that there can be no recovery because there is no evidence that the defendant was guilty of any negligence which was the proximate cause of the injuries which the plaintiff sustained. This contention is based upon what is

generally spoken of as the "simple" or "common tool" doctrine.

For instance, it is said in *Southern Ry. Co.* v. *Burford*, 120 Va. 157, 90 S. E. 616: "It is well settled that the employer is under no obligation to his servants to inspect, during their use, those common tools and appliances with which every one is conversant; and that it is not the master's duty to repair defects arising in the daily use of such appliances. In such cases it does not rest with the servant to say that the master has superior knowledge, and has thereby imposed upon him. He fully understands that the spade, the axe, the hoe, or the ladder, the instrument that he used, was not perfect, and if he was thereby injured, it was by reason of his own fault and negligence. The fact that he notified the master of the defect and asked for another implement, and the master promised to furnish it, in such a case, does not render the master responsible, if an accident occurred. A rule imposing a liability under such circumstances would be far reaching in its consequences and would extend the rule of *respondeat superior* to many of the vocations in life for which it was never intended." *Chesapeake & Ohio Ry. Co.* v. *Sparrow's Admr.*, 98 Va. 642, 37 S. E. 302; *Meador* v. *Lake S., etc., Co.*, 138 Ind. 290, 37 N. E. 721, 46 Am. St. Rep. 384.

[8] This principle is well settled, but it cannot be applied in this case. The defective ladder which caused the injury in this case is not such an appliance, not a tool. On the contrary, it is rather a place, the equivalent of a staircase, a way which the plaintiff was directed by his employer to use as his means of access to and from the hold of the vessel, his place of work.

In *Virginia Bridge & Iron Co.* v. *Jordan*, 143 Ala. 603, 42 So. 73, 5 Ann. Cas. 709, note, it appeared that

the plaintiff was injured passing over or along the trestle of the defendant company to the place where he had to work in constructing a bridge. It was necessary, in order to do his work, to pass over a plank or piece of timber connecting the two parts of the work; the plank was placed loosely upon the trestle, unfastened, and while attempting to pass over the plank, it tilted and the plaintiff was thereby thrown to the ground and seriously injured.

That case illustrates the principle applicable here. It was held to be the duty of the employer there, as here, to provide a reasonably safe way for passing and repassing. The ship and ladder here were under the sole control of the defendant for the purpose of making the repairs, and, of course, there can be no doubt about the duty of the employer not to expose the employee to unnecessary danger.

[9] The ladder cases in which it is held that the employer has discharged his duty if he supplies the servant with proper material for the construction of the ladder, of which he has custody and which he is to use, have no application. Nor do those cases apply in which the ladder itself is supplied by the master ready for the use of the servant. The master's duty is discharged in such case if the ladder is reasonable safe when delivered to the employee for use. If it thereafter becomes unsafe in the course of such use, the servant knows better about this than the master and he cannot charge the master with having any knowledge superior to his own.

As we have indicated, the principle which controls here is that which imposes upon the master the duty to provide a safe place in which his servants are required to work, and this duty extends to providing a reasonably safe entrance and exit to and from the place of work.

[10] This statement from 18 R. C. L., section 96, page 596, is well supported by authority: "But as a rule the employer is required to provide for the safety of all that portion of his premises where his employees are required to labor and such of the places thereon as they are expressly or impliedly invited and permitted to use. It is well established that this obligation extends to the places of entrance and exit from the place where the work is performed."

These cases show that that rule is well established: *National Syrup Co.* v. *Carlson,* 155 Ill. 210, 40 N. E. 492, affirming 47 Ill. App. 178 (stairway); *Fitzgerald* v. *Connecticut River Paper Co.,* 155 Mass. 155, 29 N. E. 464, 31 Am. St. Rep. 537 (outside steps); *Haber* v. *Jenkins Rubber Co.,* 72 N. J. Law 171, 61 Atl. 382; *Dorney* v. *O'Neill,* 49 App. Div. 10, 63 N. Y. Supp. 107, *Id.,* 60 App. Div. 19, 69 N. Y. Supp. 729, affirmed 172 N. Y. 595, 64 N. E. 1102; *Finn* v. *Ironclad Mfg. Co.,* 99 App. Div. 625, 90 N. Y. Supp. 887; *Chesson* v. *Jno. L. Roper Lumber Co.,* 118 N. C. 59, 23 S. E. 925; *Myers* v. *Concord Lumber Co.,* 129 N. C. 252, 39 S. E. 960.

It is well expressed in *Buzzell* v. *Laconia Mfg. Co.,* 48 Me. 113, 77 Am. Dec. 212: "The same reasoning which shows that the machinery and other instruments of labor should be safe would demand that the bridges used in passing from one part of the premises to another, or the ladders used in ascending to or descending from labor, and the passageways in the premises of the employer and within the precincts of the place where the labor is to be done, should be safe and convenient; and that at least the same care and precaution be used for the safety of the servant as for that of the stranger whose accidental presence business may require within the same limits."

The same rule is applied in *Gregoric* v. *Percy-La Salle Mining & Power Co.*, 52 Colo. 495, 122 Pac. 785, Ann. Cas. 1913E, 1030, note. In that case a miner was held entitled to recover because he fell into an unguarded ore chute, which was insufficiently lighted. The purpose for which he left his place of work was not definitely disclosed. It is clear, however, that it was for some legitimate purpose. The note to that case cites these later cases as fully supporting the rule that the duty of the master to supply a reasonably safe way of ingress and egress is like the duty to provide a reasonably safe place to work: *Strobel* v. *Gerst Bros. Mfg. Co.*, 148 Mo. App. 22, 127 S. W. 421; *Jackson* v. *Danaher Lumber Co.*, 53 Wash. 596, 102 Pac. 416.

In *Bailey* v. *Stix, etc., Dry Goods Co.*, 149 Mo. App. 656, 129 S. W. 739, the court said: "When obstructions, stairways, or pitfalls in the master's building are to be encountered in passing to and from the place of work, the same principle, of course, devolves upon the master the duty to exercise ordinary care to the end of sufficiently lighting the way of ingress and egress for the purpose of enabling the servant to enjoy a reasonable degree of safety while passing to and from the place of work. It is entirely clear that it was defendant's duty to exercise ordinary care toward maintaining lights at the stairway, until the plaintiff and other employees had quit the service for the day. * * * And, indeed, such is a personal duty of the master which he may not escape by delegating it to another, for it pertains to his obligation in respect of a safe place."

A recent (1924) ladder case is *Laurel Mills* v. *Ward*, 134 Miss. 447, 99 So. 11. There it is held that a stepladder eight feet high, provided for the use of an employee in oiling elevated machinery in a mill plant, is not a simple tool or appliance, but is a part of the plant,

a place or way upon which the employee performs his work, and must be kept reasonably safe by the employer; and where the employer knowingly provides such a defective and dangerous ladder for the servant, he is guilty of negligence and liable for damages for injury resulting therefrom on account of failure to furnish a reasonably safe place. The court there quotes from the Wisconsin case of *Puza* v. *C. Hennecke Co.*, 158 Wis. 482, 149 N. W. 223, in which it is said that, "furnishing an employee a step-ladder is furnishing him a place whereon to stand. It is a place or an appliance, not a tool."

The subject as affected by certain employers' liability statutes is annotated 23 A. L. R. 77.

[11] We have no intention by citing these cases of impinging in the slightest degree upon the "simple tool" doctrine, or the line of cases in which employees having control of and using movable ladders were denied the right to recover. This ladder, while movable within the hatchway, was in no sense an appliance entrusted to the plaintiff here for his use in connection with his work. He had not constructed it, it was not in his custody, it was accessible to others, he had no reason to doubt its sufficiency, and was not charged with any specific duty to inspect it. It was like a stairway, merely his means of access to his work in the hold of the ship, which his employer directed him to use, and this direction imposed upon the employer the duty to exercise reasonable care to see that it was a reasonably safe means of access. Certainly, the court cannot say, as a matter of law, that the defendant was free from negligence. At most, all that could be urged to relieve the defendant of responsibility is

that the questions of original and contributory negligence here arising were questions of fact to be submitted to the jury.   This has been fairly done in this case.

It follows that we are of opinion that there is no error in the judgment.

*Affirmed.*