# Richmond.

ALICE Z. JOHNSON, ET ALS. v. G. T. ELLIOTT, INCORPORATED.

January 17, 1929.

Absent, Chichester, J.

The opinion states the case.

*W. M. Minter*, for the appellant.

*Williams, Loyall & Taylor*, for the appellee.

HOLT, J., delivered the opinion of the court.

This is an appeal from a judgment of the Industrial Commission of Virginia. On March 16, 1928, this order was entered:

"Date, March 16, 1928.

"To Mr. G. T. Elliott (Employer),
 "Hampton, Virginia,
"and Mrs. Alice Z. Johnson (Claimant),
 Mobjack, Virginia,
"and Aetna Life Insurance Co. (Insurance Carrier),
 Richmond, Virginia.

"You are hereby notified that a hearing was held in the above styled case before Commissioner Kizer, at Hampton, Virginia, on February 7, 1928, and a decision rendered on March 5, 1928, denying the dependents of the deceased employee on the ground that he was engaged in maritime work and the Industrial Commission, therefore, had no jurisdiction over the claim.

"This case is, therefore, dismissed and each party will pay his own costs in this proceeding.

"INDUSTRIAL COMMISSION OF VIRGINIA,

"BOLLING H. HANDY, Chairman.

"Attest:

"W. F. BURSEY, Secretary."

Petitioners were not satisfied with the conclusions of Commissioner Kizer, and applied for a review of their case before a full Commission. This was had, and his judgment was confirmed, Commissioner Deans dissenting.

By section 9, judiciary act of 1789, 1 Stat. 76, 77, 28 U. S. C. A., section 41(3), the district courts of the United States were given "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction; * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."

In *Southern Pacific Co. v. Jensen*, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, the provisions of a workmen's compensation act were relied upon in an attempt to recover for Jensen's death. When killed, he was unloading a vessel at a pier in North river, New York. The ship was afloat in tidal waters and was engaged in seabourne traffic. He was aboard ship when killed. The court was of opinion that no recovery could be had, and said: "Exclusive jurisdiction of all civil cases of admiralty and maritime jurisdiction is vested in the Federal district courts, 'saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.' The remedy which the compensation statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any

court and is not saved to suitors from the grant of exclusive jurisdiction. * * *

"The work of a stevedore in which the deceased was engaging is maritime in its nature; his employment was a maritime contract; the injuries which he received were likewise maritime; and the rights and liabilities of the parties in connection therewith were matters clearly 'within the admiralty jurisdiction. *Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 59, 60 [34 S. Ct. 733, 58 L. Ed. 1208, 51 L. R. A. (N. S.) 1157].
* * * * * * *

■ "In view of these constitutional provisions and the Federal act it would be difficult, if not impossible, to define with exactness just how far the general maritime law may be changed, modified, or affected by State legislation. That this may be done to some extent cannot be denied. A lien upon a vessel for repairs in her own port may be given by State statute. * * And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress or works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself."

■ After this decision, Congress attempted to remedy the situation by the act of October 6, 1917 (28 U. S. C. A., section 41 (3), which added to the words, "saving to suitors in all cases the right of a common law remedy where the common law is competent to give it," the further words, "and to claimants the rights and remedies under the workman's compensation law of any State."

This attempt to delegate to the States jurisdiction in admiralty was declared unconstitutional in *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145. Stewart was employed as bargeman and was doing work of a maritime nature. He fell into the Hudson river and was drowned.

Congress again attempted to solve these difficulties presented in the *Jensen Case* by act of June 22, 1922, 28 U. S. C. A., section 41 (3). There the saving clause extended to "claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel their rights and remedies under the workman's compensation law of any State, district, territory or possession of the United States, which rights and remedies when conferred by such law shall be exclusive."

This statute came under review in *State of Washington* v. *W. C. Dawson*, 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646, and it too was declared unconstitutional.

In recognition of the desirability of extending relief to this class of employees, the court in that case made this suggestion: "Without doubt Congress has power to alter, amend, or revise the maritime law by statutes of general application embodying its will and judgement. This power, we think, would permit enactment of a general employer's liability law, or general provisions for compensating injured employees; but it may not be delegated to the several States. The grant of admiralty and maritime jurisdiction looks to uniformity, otherwise wide discretion is left to Congress."

Responding thereto, Congress passed the act of March 4, 1927, known as the longshoremen and harbor worker's compensation act (33 U. S. C. A., section 901, *et seq.*). It, as we shall presently see, has given partial but not complete redress.

Although the *Jensen Case* was a five to four decision, it has become a landmark in admiralty law. "Since the decision in the *Jensen Case*, it seems to be settled that the State compensation act, even though elective, is inapplicable if the person injured was employed under the maritime contract, and was injured on water within admiralty jurisdiction." Note, 25 A. L. R. 1032, citing many cases.

In *Colonna Shipyard, Inc.* v. *Dunn*, 151 Va. 740, 145 S. E. 342, decided October 30, 1928, the court, speaking through Chinn, J., said: "It has been definitely settled by the decisions of the Supreme Court of the United States that when an employee suffers injury from a maritime tort, which is within the jurisdiction of admiralty, the workman's compensation statutes of the several States have no application. This doctrine was in effect recognized in the recent Virginia case of *Colonna Shipyard, Inc.* v. *Bland*, 150 Va. 349, 143 S. E. 729."

Petitioners concede that the *Jensen Case*, in proper circumstances, is the law of the land, but say that it is subject to certain well recognized qualifications and exemptions, and cite us to the leading case of *Grant-Smith-Porter Ship Co.* v. *Rohde*, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008. There a ship had been launched and was in navigable waters, but not ready for delivery. Rohde was injured while on work pertaining to its construction. In its opinion the court there, in part, said:

"And as both parties had accepted and proceeded under the statute by making payments under the industrial accident fund, it cannot properly be said that they consciously contracted with each other in contemplation of the general system of the maritime law.

■ ■ "Under such circumstances, regulation of the rights, obligations and consequent liabilities of the parties, as between themselves, by a local rule would not necessarily work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

"The general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality, has been so frequently asserted by this court that it must now be treated as settled.

"In *Western Fuel Co.* v. *Garcia* [257 U. S. 233, 42 S. Ct. 89, 66 L. Ed. 210], we recently pointed out that as to certain local matters regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by State statutes. The present case is controlled by that principle. The statute of the State applies and defines the rights and liabilities of the parties. The employee may assert his claim against the industrial accident fund, to which both he and the employer have contributed as provided by the statute, but he cannot recover damages in an admiralty court."

In considering this case it is to be remembered, however, that the ship had not been completed and had not been delivered while Rohde was a carpenter and engaged in its construction. ":The contract for constructing the *Ahala* was non-maritime, and although the incompleted structure upon which the accident occurred was lying in navigable waters, neither Rohde's general employment nor his activities at that time had any direct relation to navigation or commerce." *State of Washington* v. *Dawson, supra.*

■ What are matters of such local concern only as to permit the rights and liabilities of the parties to be determined by local law and which do not interfere with the characteristic features of general maritime rules, particularly when the parties have contracted with reference to local laws, is not always easy to determine.

The *Rohde Case* involved the construction of a non-maritime contract.

In *State Industrial Commission* v. *Nordenholt Corp.*, 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, it appears that decedent was working on a dock as stevedore engaged in the unloading of a ship in New York harbor. The Court of Appeals of New York was of opinion that this case fell within the doctrine of the *Jensen Case*, and denied the right of recovery. In this it was reversed, the Supreme Court being of opinion that the rules enunciated in the *Rohde Case* permitted a recovery. In the course of its opinion it said: "When an employee working on board a vessel in navigable waters sustains personal injuries there, and seeks damages from the employer, the applicable legal principles are very different from those which would control if he had been injured on land while unloading the vessel. In the former situation the liability of the employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the liability, and the local law has always been applied. The liability of the employer for damages on account of injuries received on shipboard by an employee under a maritime contract is matter within the admiralty jurisdiction; but not so when the accident occurs on land."

The Supreme Court, in the *Dawson Case*, said that the *Nordenholt Case* was "a matter never within the

admiralty jurisdiction," and in no wise departed from the doctrine of the *Jensen Case.*

*Millers' Indemnity Underwriters* v. *Braud,* 270 U. S. 59, 46 S. Ct. 194, 70 L. Ed. 470, is a case in which decedent was employed as a diver and submerged himself from a floating barge in the navigable waters of Sabine river for the purpose of sawing off timbers of an abandoned set of ways, once used in launching ships. The court stressed the fact that the parties did not consciously contract with reference to maritime law and said that while the record disclosed a maritime tort, the matter was of such local concern that it worked no material prejudice to the characteristic features of matters pertaining to admiralty. A recovery was permitted.

For the same reason a recovery was permitted in *State Industrial Board of the State of New York* v. *Terry and Tench Co.,* 273 U. S. 639, 47 S. Ct. 90, 71 L. Ed. 817.

*Smith and Son* v. *Taylor,* 276 U. S. 179, 48 S. Ct. 228, 72 L. Ed. 520, decided by the Supreme Court on February 20, 1928, involved an appeal from the Supreme Court of Louisiana. George Taylor, a longshoreman, was engaged in unloading a vessel lying at a New Orleans dock. He was killed on the dock by a sling operated from the ship. A recovery in that case was permitted. The court, in the course if its discussion, said: "Deceased was engaged in maritime work under a maritime contract. If the cause of action arose upon the river, the rights of the parties are controlled by maritime law, the case is within the admiralty and maritime jurisdiction, and the application of the Louisiana compensation law violated [Const. U. S.] section 2 of article 3. But, if the cause of action arose upon the land, the State law is applicable."

In *Alaska Packers' Association* v. *Peterson* (Industrial Accident Commission), 276 U. S. 467, 48 S. Ct. 346, 72 L. Ed. 400, decided by the Supreme Court April 9, 1928, it appears that Peterson was employed in California to go to Alaska as a seaman on the "Star of Iceland." When he arrived at the packing company's cannery he was to go ashore and do "anything I was told to do." It was his duty to repair nets, look after small boats and to take them out. He acted as fisherman on one of them. While standing on the land in Alaska, he endeavored to push a stranded boat, twenty-six feet long, into navigable water and was hurt. The court, following the *Rohde Case*, held that the work was of such local character that local compensation laws might well be applied.

*Sulton Railway & Timber Co.* v. *Department of Labor, etc., of the State of Washington*, and *Eclipse Mill Co.* v. *same*, 277 U. S. 135, 48 S. Ct. 505, 72 L. Ed. 820, are cases heard together and decided by the Supreme Court on May 14, 1928. In one case saw logs were put into booms after they had been thrown into a navigable river, that they might be conveniently towed elsewhere for sale. In the other, a sawmill stood on the bank of a navigable river. Logs were towed in booms to a point near the mill and anchored. The booms were taken apart and the logs were drawn into it for sawing. "In both instances the place of work is on navigable water; in one it is done before actual transportation begins. and in the other after transportation is completed." The court, in consideration of this case and citing the *Rohde Case*, said: "It is settled by our decisions that where the employment, although maritime in character, pertains to local matters, having only an incidental relation to navigation and commerce, the rights, obligations and liabilities of the parties, as between them-

selves, may be regulated by local rules which do not work material prejudice to the characteristic features of the general maritime law or interfere with uniformity."

Mr. J. V. Groner, in an article in 14 Va. Law Review 280, 289, on the "Demarcation of Jurisdiction," reaches these conclusions:

"(A). Where the contract of employment is maritime and the tort is maritime, then admiralty alone has jurisdiction. *Southern Pacific Co.* v. *Jensen, supra; Robins* v. *Dahl* (266, U. S. 449), 'saving to suitors in all cases the right or a common law remedy where the common law is competent to give it;' *Chelentis* v. *Luckenbach S. S. Co.* (247 U. S. 372); *Carlyle Packing Co.* v. *Old Sandanger* (259 U.S. 255), *Messel* v. *Foundation* (47 S. Ct. 695).

"(B). Where the contract of employment is maritime but the tort is non-maritime, then admiralty has no jurisdiction. *State Industrial Commission of New York* v. *Nordenholt, supra.*

"(C). Where the contract of employment is non-maritime, or, as the Supreme Court has expressed it, 'of purely local nature and not concerned with navigation or commerce,' but the tort is maritime, then admiralty has jurisdiction, but the jurisdiction is not exclusive and the parties may contract themselves out of admiralty or be contracted out of it by virtue of the State law in relation to their employment, and thus give effect to the State compensation act. *Grant-Smith-Porter* v. *Rohde, supra; Millers' Indemnity Underwriters* v. *Braud, supra; State Industrial Board of New York* v. *Terry Tench, supra.*"

It is not possible to examine, or even to cite, all of the authorities dealing with this subject. The general principles involved are clear; trouble lies only in their application.

■ Commissioner Kizer returns with his opinion this finding of facts:

"The evidence in this case shows that on August 16, 1927, John Calvin Johnson was, and had been for some years prior thereto, in the employ of G. T. Elliott, Incorporated, Hampton, Virginia, at an average weekly wage of $16.00.

"It was shown by a number of witnesses that, at the time of the accident, which resulted in Johnson's death, he was engaged in moving some barrels aboard the seven-ton boat of the defendant, on which he was, it was shown, the engineer. In the course of so doing, in some unexplained manner, he seems to have lost his balance and fell overboard and drowned before assistance could reach him. At the time of this occurrence the boat was near the mouth of Severn river, in Mobjack bay, about four miles from land.

"Johnson left as dependents, his wife, Alice Z. Johnson, aged thirty-six years; son, Calvin Johnson, Jr., nine years; and daughter, Alice May Johnson, three months.

"It is not felt necessary to review the testimony of the witnesses as all of them were in agreement that the decedent was employed as engineer and met his death while on a vessel plying navigable waters at a point several miles from shore. It was conclusively shown that he was engaged in maritime work."

Afterwards and at the hearing before the full Commission, these additional findings were made upon request:

1. "The boat was used entirely in nearby waters."

2. "Decedent ran the gasoline engine on said launch, or small boat, most of the time, and also helped in loading and unloading said launch, or small boat, and at times worked in factory of employer."

3. "Said launch, or small boat, was not of the size and

character requiring· licensed officers or a duly signed crew,· under the law governing the operation of water crafts and the regulation promulgated by authority thereof."

4. "The parties contracted solely in view of the workmen's compensation law of Virginia (Laws 1918, chapter 400, as amended) and not with any view to the general system of maritime laws."

The Commission was also requested to make this finding:

"That said small boat had no regular crew but was operated by two men·and that it never went outside of local inland waters in sight of land, and was employed in the purely local work of use as an adjunct to the factory of employer."

This it declined to do, being of opinion that it was not warranted by the evidence.

The books are full of cases but the question is a Federal one and so far as they have spoken we must follow the Federal courts. As a practical proposition we are to decide if a given state of facts calls for application of those general rules enunciated in *Southern Pacific Co.* v. *Jensen, supra,* or comes within that class of exceptions pointed out in *Grant-Smith-Porter Ship Co.* v. *Rohde, supra.* When the general maritime law is not affected and when the matter is so local as to work no material prejudice to its characteristic features or interfere with its proper harmony and uniformity in relation to trade, commerce and navigation, then State laws may be applied, but it·is not a prerequisite to exclusive admiralty jurisdiction that it should be either international or interstate traffic. The same law governs boats plying between Richmond and Norfolk and those which run from Richmond to Baltimore.

The fact that the parties thought that their

rights and liabilities were fixed by the Virginia statute and not by maritime laws, and contracted accordingly, is entitled to weight but cannot of itself take from admiralty jurisdiction in proper cases. This Congress itself cannot do, and certainly individuals cannot.

 The longshoremen's harbor workers compensation act does not purport to cover the entire field. In terms it does not cover "a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." Section 3, paragraph (a), subd. 1 (33 U. S. C. A. section 903).

Of course, if that act did preempt the entire field, jurisdiction of State courts would, of necessity, be superseded in every case where death or disability came to a member of a crew, but since small vessels of under eighteen tons net are excluded, their status remains as it was before this act was passed.

 Shellfish packing establishments located on, and operating in, the Chesapeake bay and its tributaries, are in many instances industries of considerable magnitude. The boat from which Johnson fell was a seven-ton power boat and "one of several similar craft owned by G. T. Elliott, Incorporated," from which we are justified in assuming that his employer was a substantial commercial establishment and that these boats were of the class ordinarily used in such service. Their operations were confined to "nearby waters," but this is not to be taken too literally. That in judgment had left its home port at Hampton, gone up the Chesapeake bay after a load of crabs, and at the time of the accident was off the mouth of Severn river and four miles from land. The Commission has declined to find that it never went out of sight of land, or that it had no regular crew. Johnson was a member of its crew and

in charge of the engine. His contract of service called for work afloat and ashore. His major duties were afloat, but he worked around the factory when he was not operating the boat, so it is fair to say that at the time of his death, both the employment and the accident were marine.

We attach no importance to the fact that this boat was not a carrier of freight for others and worked only for its owner. The same might be said of large seagoing steam trawlers. Are these operations, which practically cover the tidal waters of Virginia, so local in their nature as to bear only incidental relations to trade, commerce and navigation?

Literally, the accident was local, as every accident and injury to the person is local, but its effects are general in that it touches a service common to every tidal State.

The principle which distinguishes *Grant-Smith-Porter Ship Co.* v. *Rohde, supra,* from *Southern Pacific Co.* v. *Jensen, supra,* is plain enough, but its proper application to a given state of facts is sometimes exceedingly difficult. Accidents coming within the exception, as illustrated by the cases cited, are usually so local as not to be really marine at all—such as pushing a small boat into the water, sawing off piles from an abandoned way and injuries suffered on booms "before actual transportation begins" and "after transportation is completed." All such cases have little to do with commerce and navigation.

Fishing craft engaged in supplying packing establishments and which operate at large in tidal and navigable waters, whether their operations are local or not in the sense that they do or do not go beyond the confines of their States, are entitled to the same rights and should be subject to the same liabilities, and

this is true whether they fish in Puget sound or the Chesapeake bay. The heart of admiralty jurisprudence is that there should be one law for one service. Commercial fishing in tidal waters, although it be not interstate, is more than incidentally related to trade, commerce and navigation.

For reason stated we are of opinion that the judgment of the Industrial Commission should be affirmed, and it is so ordered.

*Affirmed.*