Orvner D. BIGGS, Plaintiff,

v.

NORFOLK DREDGING COMPANY, Defendant.

Civ. A. No. 4357.

United States District Court
E. D. Virginia,
Norfolk Division.

Jan. 25, 1965.

Kelsey & Rabinowitz, Ralph Rabinowitz, Norfolk, Va., for plaintiff.

Baird, Crenshaw & Ware, Guilford D. Ware, Norfolk, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

This is another case in which a shipyard worker, or one otherwise engaged in "twilight zone" activities, has collected in full the benefits paid to him pursuant to an award under a compensation statute, and then proceeds to file an action under the Jones Act, 46 U.S.C. § 688 et seq. In three causes of action plaintiff claims (1) damages for negligence and unseaworthiness under the Jones Act and General Admiralty Law, (2) maintenance under the General Admiralty Law, and (3) damages for failure to pay maintenance in accordance with the rule pronounced in Vaughan v. Atkinson, 369 U. S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88.

The matter is before the Court on a motion for summary judgment.

Plaintiff, an employee of defendant, was injured on July 24, 1961. The following day the defendant caused to be prepared and subsequently filed an "Employer's First Report of Accident" with the Industrial Commission of Virginia, in accordance with the Virginia Workmen's Compensation Act. The report, among other matters, states the cause of the accident as follows:

"[Employee] was loading pipe on barge and piece of pipe rolled into injured bruising both legs."

On August 4, 1961, the now plaintiff signed a "Memorandum of Agreement as to Payment of Compensation." Because there was an error of 40 cents in the average weekly wage, the Industrial Commission requested a new agreement and, on August 25, 1961, the new agreement was executed by plaintiff. A "Notice of Award" was made and forwarded to the defendant, its compensation insurance carrier and the now plaintiff on August 30, 1961. An "Agreed Statement of Fact" was executed by plaintiff on September 12, 1961, indicating that he had returned to work on that day. By reason of his return to work, an order was entered by the Commission on September 13, directing that the award of temporary total incapacity as provided in the order of August 30, 1961, be vacated and set aside as of September 11, 1961.

Subsequent to this latter date the plaintiff consulted an attorney, thoroughly versed in the field of maritime law and well acquainted with the various provisions of the Virginia Workmen's Compensation Act and the Longshoremen's and Harbor Workers' Compensation Act. By letter dated November 2, 1961, plaintiff's attorney advised the Commission as follows:

"This is to inform you that the writer represents Mr. Biggs in his claim before the Commission for injuries arising on July 24, 1961, while in the employ of the Norfolk Dredging Company. Mr. Biggs has been unable to return to work up to the present time. The insurance carrier has cut out his compensation prematurely. It is also quite probable that Mr. Biggs will have a valid claim for permanent partial disability."

The Commission replied by letter dated November 10, 1961, requesting the completion of an application for a hearing. On December 14 the plaintiff executed the form and caused same to be filed by the attorney's letter of the same date. By letter dated December 18 the Commission advised the insurance carrier of the filing of the application and requested the carrier to advise its attitude as to same. The carrier, by letter dated December 27, joined in the request for a hearing.

The hearing was conducted on February 21, 1962. The details of the accident were not permitted to be shown, the Deputy Commissioner limiting the evidence to a change in condition. A supplemental award was made on March 14, 1962, providing for additional compensation and an attorney's fee to plaintiff's counsel. The opinion of Commissioner Miller, a copy of which was sent to the plaintiff and his attorney, contains the following comment:

"Biggs' regular employment is shipyard work, working on boats."

As the medical evidence suggested the necessity of an operation on the knee joint, the carrier then requested Biggs to submit to an operation by Dr. W. Clarke Pole, an orthopedic surgeon acceptable to plaintiff. This request was made on March 22 and by letter dated March 27 plaintiff's attorney advised that Biggs would see Dr. Pole on April, 11, 1962. On May 4, 1962, the carrier filed an application for hearing by reason of change in condition, alleging that Biggs refused to submit to an operation. Dr. Pole reported on May 17 and June 2 that Biggs was still "undecided as to whether or not he should have surgery to the knee." Another hearing was conducted on June 20, 1962, at which time the plaintiff, a man weighing 300 pounds, stated that he had not submitted to an operation because Dr. Pole could not guarantee success.

The Commission, by letter dated July 2, 1962, requested another orthopedic surgeon, Dr. Hollins, to examine Biggs. Dr. Hollins, following his examination on July 16, reported no need for surgery and stated that Biggs had attained maximum improvement, but gave him a rating of "not over 10 per cent permanent partial disability of this right leg." On July 24, 1962, the Commission handed down another opinion and award fixing "a permanent 10% loss of use of the right leg" and holding that Biggs was not unjustified in refusing to submit to an operation which was not likely to reduce disability and which might be attendant with danger to life and limb. The award continued the payment of compensation and provided for the allowance of an additional attorney's fee to plaintiff's counsel. Thereafter, on August 27, 1962, the plaintiff executed a "Supplemental Memorandum of Agreement as to Payment of Compensation" and another "Agreed Statement of Fact." The total amount paid to plaintiff under all awards of the Industrial Commission was $1627.60 and, in addition, medical payments aggregated $139.00. These payments were completed on some date prior to October 2, 1962. No appeal was ever taken from any award and the case was closed in December, 1962.

On July 26, 1963, plaintiff filed his present action referred to in the first paragraph of this memorandum.

■ We start with the premise that if the injuries sustained by the plaintiff were maritime, both with respect to the locality of the alleged tort and the direct relation of his employment to navigation and commerce, the matter falls within the exclusive jurisdiction of admiralty and the Virginia Workmen's Compensation Act is inapplicable. Colonna Shipyard, Inc. v. Bland, 150 Va. 349, 143 S.E. 729, 59 A.L.R. 497; Colonna Shipyard v. Dunn, 151 Va. 740, 145 S.E. 342; Johnson v. G. T. Elliott, Inc., 152 Va. 121, 146 S.E. 298.

■ Beyond peradventure, the mere filing of a claim for workmen's compensation does not bar the plaintiff under the doctrine of election of remedies or,

if an award has been made but is not yet final or is on appeal, nothing has occurred in the way of an accord and satisfaction. Marceau v. Great Lakes Transit Corporation, 2 Cir., 146 F.2d 416. The same principle applies where the payments are voluntarily made without contract or adjudication. Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670. Thus it follows that where there is no hearing, no award, and no compulsion of payment, the injured party cannot be estopped to claim otherwise. Such payments, if made, are not upon any contract of settlement or as a final accord and satisfaction. The payments are merely credited on the claim in the event of the recovery in the case touching admiralty jurisdiction.

On July 2, 1964, subsequent to the argument of counsel on the motion for summary judgment, the defendant petitioned the Corporation Court of the City of Norfolk for the entry of a judgment pursuant to § 65–96 of the Code of Virginia, 1950 as amended. The proceeding was *ex parte*, but a judgment was entered by said court.

On the day of the accident the defendant was floating a submerged pipeline lying in the water at the defendant's shipyard. The particular work was to put the sections of the submerged pipeline together. One end of the pipe was aboard a platform or pontoon tied to defendant's dock. Alongside this platform or pontoon was a derrick barge; during the course of operation the crane picked up the pipe from the barge (otherwise described as a platform or pontoon) and apparently one end came in contact with plaintiff's leg while plaintiff was sitting on the derrick barge with his legs hanging over the side. Immediately prior to the accident Biggs had been on the pontoon barge and was injured while climbing from the pontoon to the derrick barge. Without detailing the facts of the accident it is sufficient to state that the equipment was floating in water but was physically connected with a dock leading to land. From time to time— but not on the day in question—Biggs handled the lines and assisted in the movement of these barges.

■ This case presents the reverse of the situation as set forth in Marceau and Kibadeaux, supra. Here we have a plaintiff who has invoked the jurisdiction of the Industrial Commission of Virginia,[1] attended two hearings, accepted three awards which compelled payments for his benefit, and now seeks relief under the Jones Act or, in the alternative, a claim for damages at the hands of his employer under the theory that he was engaged in maritime work and, as such, is entitled to recover for the unseaworthiness of a vessel under Reed v. The Yaka, 373 U.S. 410, 83 S. Ct. 1349, 10 L.Ed.2d 448.

It is, of course, true that where awards are made under both the state and federal compensation statutes and, even where the state award has priority, it is still permissible, *where the payments are continuing*, to find that the claimant's remedy is under the Longshoremen's and Harbor Workers' Compensation Act. Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 192 F.2d 968. We do not have before us in this case whether the plaintiff, if a timely application had been made under the Long-

---

1. The argument is advanced that plaintiff is ignorant. Accepting this statement as a fact, he immediately engaged the services of competent counsel, thoroughly experienced in admiralty matters and related compensation benefits, and thereafter successfully sought additional awards on two occasions. His counsel concedes that he was aware of the law which prohibits the exercise of jurisdiction by the Industrial Commission of Virginia and by the Bureau of Employees' Compensation in cases involving injuries to seamen engaged as such. The attorney merely answers by saying that the law gives an injured employee the inherent right to invoke jurisdiction under either the state or federal compensation act and, after all benefits have been paid, the further right to maintain an action under the Jones Act contending that he was a seaman. One must frown upon such a practice. The court system is still entitled to some integrity.

shoremen's Act, would be entitled to an award—nor do we express any opinion on same now that payments under the state award have been fully completed. Our problem, simply stated, is whether an injured person who claims benefits under either a state or federal compensation act (both of which exclude coverage as to seamen) and who has received in full all of the benefits he sought, may now collaterally attack the award by saying, "I was a seaman", and, "I have a right to now let the jury decide whether I was a seaman." Put in another way, his contention is that he may lawfully seek a judgment at the hands of one tribunal and, after being fully paid, attack the jurisdiction of that tribunal without repaying the judgment by proceeding collaterally.

■ We do not believe that the *ex parte* proceeding on the part of the defendant in securing the entry of a judgment on July 2, 1964 (after the argument of counsel on the pending motion) materially affects the rights of the parties. § 65–96 (formerly § 62) is considered in Richmond Cedar Works v. Harper, 129 Va. 481, 106 S.E. 516, 520. The finality of the award of the Industrial Commission is unquestioned, even without the entry of judgment by a court of record having power to enforce an award under § 65–96.

In Hagens v. United Fruit Co., 2 Cir., 135 F.2d 842, the plaintiff attempted to do essentially the same as the present plaintiff is doing. He brought an action under the Jones Act after having received an award under the Longshoremen's Act and accepting all benefits thereunder. His contention was that since the Commissioner did not explicitly find that plaintiff was not a member of a crew, the award under the Longshoremen's Act could be disregarded. After indicating that the Commissioner's finding did point to the fact that plaintiff was not a crew member, Circuit Judge Frank said:

> "But aside from that, and more important, is the fact that we do not consider a finding as to non-membership in the crew to be what has been called a finding of a 'jurisdictional fact.' [citing authority]. Consequently the determination by the Commissioner comes within the general rule that there is a presumption of jurisdiction unless the absence of jurisdiction affirmatively appears on the face of the record, as it does not here. As a consequence, the award cannot be collaterally attacked."

We do not disagree with plaintiff that, had he initially proceeded under the Jones Act prior to seeking compensation benefits, he perhaps would have a plausible argument to submit to a court or jury that he was a "member of a crew of a vessel." To review these facts would require a determination as to whether (1) the vessel was in navigation, (2) the plaintiff had a more or less permanent connection with the vessel, and (3) the plaintiff was aboard, primarily to aid in the navigation. While this Court doubts that plaintiff could sustain this burden, we are ever mindful of the trend of decisions pointing to this issue being one for the jury.

■ The Hagens case remains the law today. We see no reason to distinguish between the absence of an affirmative finding of non-membership of a crew in a proceeding under the Longshoremen's Act and under the Virginia Workmen's Compensation Act. Certainly in the present controversy the absence of jurisdiction does not affirmatively appear on the face of the record. As stated in Hagens and in Schantz v. American Dredging Co., 3 Cir., 138 F.2d 534, the issue is not one of "jurisdictional fact."

If the issue is not one of "jurisdictional fact" it seems clear that the action of the Industrial Commission in thrice approving an "Agreed Statement of Fact" setting forth that Biggs sustained "compensable injuries" under the Virginia Act, and in specifically holding that the injuries were received "in the course of that employment," would constitute *res judicata.* See Raven Red Ash Coal Co. v. Griffith, 181 Va. 911, 27 S.E.2d 360, where the Supreme Court of Appeals

of Virginia accorded such treatment to a finding and order of the Industrial Commission.

We are not concerned with a discussion of seamen's releases and do not consider this argument worthy of consideration. It is completely foreign to the issues here presented.

 Plaintiff relies heavily upon a line of authority holding that a state compensation award to an employee coming within the purview of the Federal Employers' Liability Act is a nullity. When we review these cases,[2] we find that the controlling test is whether the issue of interstate commerce had been raised and litigated. There is ample authority to the effect that where there has been a finding that the employee was engaged in intrastate commerce at the time of the accident, and such finding has become final, an action under the Federal Employers' Liability Act cannot be maintained, regardless of what appeared to be the facts of the case. Chicago, R. I. & P. R. Co. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757; Landreth v. Wabash R. Co., 7 Cir., 153 F.2d 98, cert. den. 328 U.S. 855, 66 S.Ct. 1345, 90 L. Ed. 1627; Bretsky v. Lehigh Valley R. Co., 2 Cir., 156 F.2d 594. Under the Virginia Act, common carriers by railroad or by steam motive power, whether interstate or intrastate, are excluded from the act. Moreover, we believe that Commissioner Miller's finding that "Biggs' regular employment is shipyard work, working on boats" is sufficiently affirmative to constitute a finding of jurisdiction if such is necessary. There are many exclusions in the Virginia Act such as casual employees, farm laborers, domestic servants, etc. To uphold plaintiff's theory would require the Industrial Commission to expressly negate every exclusionary classification in each case. We do not believe that the law contemplates such a requirement where the claimant has sought, with the aid of competent counsel, several awards under the Act. We heartily agree with the language of the late Circuit Judge Clark in Heagney v. Brooklyn Eastern Dist. Terminal, 2 Cir., 190 F.2d 976, 978, where he said:

"When counsel came into the case and conducted its prosecution over many months, with obvious success signalized by increased or additional awards, only to raise this issue at a late date when the end of state compensation was apparently approaching, there should no longer be any possible doubt as to the waiver. If there is ever to be any settlement of legal claims we feel that it must be in a case such as this where a claimant before an administrative board is adequately represented by counsel over a long period, during which the rights, potential and actual, of the client are perfectly obvious to anyone with the slightest legal training, and where there is no suggestion of fraud or concealment from the lawyer on the part of the employer."

We could go on indefinitely with a discussion of the trend of decisions toward assertion of federal jurisdiction under the Longshoremen's Act, including Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1096, 8 L.Ed.2d 368. Presumably the facts surrounding plaintiff's injury may have placed him within that line of cases dealing with the "twilight zone." Some may argue that, since Calbeck, the "twilight zone" no longer exists. But whether it exists or not, it cannot convert a shipyard worker or harbor worker into a seaman where the injured party has sought and obtained relief at the hands of a competent tribunal. Whether the circumstances of this case

2. Hoffman v. New York, N. H. & H. R. Co., 2 Cir., 74 F.2d 227, cert. den. 294 U.S. 715, 55 S.Ct. 513, 79 L.Ed. 1248; Pritt v. West Virginia N. R. Co., 132 W. Va. 184, 51 S.E.2d 105, 6 A.L.R.2d 562; Bretsky v. Lehigh Valley R. Co., 2 Cir., 156 F.2d 594; Zimmerman v. Scandrett, D.C.Wis., 57 F.Supp. 799; DeGennaro v. Pennsylvania R. Co., D.C.Pa., 68 F. Supp. 269; Erie R. R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057.

are such that we deem it *res judicata*, estoppel, accord and satisfaction, or waiver is not of great consequence. We hold that plaintiff is barred from now seeking relief as a seaman in an action under the Jones Act.

Prior to argument plaintiff sought leave to file an amended complaint setting forth alternative fourth and fifth causes of action. Whether the amended complaint is permitted to be filed is of no importance, but as the Court will discuss same, the amended complaint may be filed and made a part of the record on appeal.

■ In his proposed fourth cause of action plaintiff, as an alternative to his contention that he was a seaman under the Jones Act, claims damages as one rendering maritime services as a harbor worker. It is plaintiff's contention that the statutory duty was imposed upon his employer, the defendant herein, to report the accident and injury to the Bureau of Employees' Compensation and that defendant, although admittedly reporting the accident under the Virginia Workmen's Compensation Act, violated §§ 904, 906, 908, 910, 914, 930 and 934 of the Longshoremen's and Harbor Workers' Compensation Act, and plaintiff is therefore entitled to damages at common law. The argument is totally devoid of merit. It was conceded in argument that the defendant carries compensation insurance under both the state and federal acts. § 904 states:

"Every employer shall be liable for and shall secure the payment to his employees of the compensation payable under sections 907, 908, and 909 of this title."

§ 905, relating to "Exclusiveness of Liability", makes the following exception:

" * * * except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

What plaintiff now contends is that since the employer allegedly selected the wrong tribunal for the purpose of reporting the accident, plaintiff can now sue in damages with the resultant stripping of defenses. The only authority cited to support this ridiculous contention is Rivers v. Norfolk, Baltimore & Carolina Line, Inc., E.D.Va., 210 F.Supp. 283, 286, where one sentence is taken out of context. The issue in Rivers does not even remotely resemble the contention now advanced. The meaning of the words "fails to secure payment of compensation as required by this chapter" is fully discussed in Thibodeaux v. J. Ray McDermott & Co., 5 Cir., 276 F.2d 42, and the import of that decision clearly demonstrates that, by analogy, liability cannot be imposed upon an employer in an action at law merely because the employer determined that the state act was controlling. To hold otherwise would make an employer the guarantor of the proper tribunal—the employer would be subjected to criminal (and civil) penalties under both state and federal acts, as § 65–102 of the Virginia Workmen's Compensation Act contains almost the identical provision as set forth in § 905 of the Longshoremen's Act.

The fifth alternative cause of action seeks relief under the doctrine pronounced in Reed v. S. S. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448. It is plaintiff's contention that, assuming arguendo the fact that he was not a seaman, he was nevertheless engaged in maritime work doing the traditional work of a seaman and, even though he has received

benefits under a compensation act, he may still maintain an action against his employer (the owner of the vessel) under the warranty of seaworthiness.

Admittedly the decision in Reed v. S. S. Yaka, supra, gives rise to confusion. As the dissent points out, a basic aspect of the Longshoremen's and Harbor Workers' Compensation Act has been effectively "repealed." To construe Reed literally, without an effort to determine what the majority concluded to do—namely, to prevent the erection of an economic shield of protection for the benefit of the shipowner who elected to operate his own stevedoring company or vice versa—would result in a never-ending flow of litigation. Mr. Justice Black, the author of the majority opinion in Reed, wrote the dissent in Italia Societa per Azioni di Navigazioni v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L. Ed.2d 732, in which dissent the Chief Justice and Mr. Justice Douglas joined. As all three of these members of the court participated with the majority in Reed, we deem it appropriate to examine footnote 2 of the dissent in Italia Societa per Azioni di Navigazioni, supra, where it is said:

> "Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, held *only* that a longshoreman could bring a suit for unseaworthiness against a stevedoring company which chartered a ship and was the longshoreman's employer. In that case no issue as to implied warranty of workmanlike service arose because the stevedoring company had agreed in any case to hold the shipowner harmless without regard to negligence, see 183 F.Supp. 69, 70; furthermore, the stevedoring company there was also the operator of the vessel, and therefore in that particular case was primarily liable for unseaworthiness."

▮ Plaintiff, in the instant proceeding, would have us extend the Reed doctrine to include any maritime worker *allegedly* doing the traditional work of seamen, thereby requiring courts to go behind final awards under state or federal compensation acts, and calling upon district courts and juries to reexamine any and all factual contentions. We do not believe that Reed was ever intended to bring about this result. In Reed, the libelant was undeniably in the status of a longshoreman. The same is true in Hertel v. American Export Lines, S.D. N.Y., 225 F.Supp. 703; Miculka v. American Mail Line, Ltd., D.Ore., 229 F.Supp. 665; and Aycock v. Lykes Bros. S. S. Co., S.D.Tex., 1964 A.M.C. 1883. The latter three cases are the only authorities found at the time of writing this opinion which even remotely touch upon the Reed doctrine involving compensation payments. No other authorities are cited by plaintiff or defendant. We hold that the limiting effect of Reed must be confined to instances in which the claimant is undeniably a longshoreman working aboard a vessel owned and operated by his stevedore-employer. While the defendant in this case was admittedly the owner and operator of the two barges upon which the plaintiff worked, the nature of plaintiff's work was not even remotely connected with longshoring—he was, in fact, a shipyard worker which required him to be on boats from time to time in the performance of his duties.

Present order granting defendant's motion for summary judgment, permitting plaintiff's amended complaint to be filed, and treating defendant's motion for summary judgment as a motion directed to the amended complaint, the motion will be granted and the action dismissed at the costs of the plaintiff.